UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States,

       Plaintiff,

v.                                            Case No. 11-cr-20752

D-1, Orlando Gordon, et al.,                Sean F. Cox
                                                          United States District Court Judge

              Defendants.
_____/

**OPINION AND ORDER
DENYING DEFENDANT ORLANDO GORDON'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE PURPOSELY SEIZED ON FEBRUARY 11, 2008, ALLEGEDLY
PURSUANT TO A SEARCH WARRANT WHICH WAS EXECUTED AT 31020
MCKINNEY DRIVE, FRANKLIN, MI [DOCKET NO. 164]**

On January 10, 2012, a federal grand jury returned a multi-count indictment charging Defendant Orlando Gordon ("Gordon") with Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, Cocaine, and Cocaine Base in violation of 21 U.S.C. §§ 842(a)(1) and 846. (Docket No. 3, at 1–3.) The indictment also asserts criminal forfeiture against Defendant Gordon pursuant to 21 U.S.C. § 853. (*Id.* at 4–6.)

On November 14, 2012, the grand jury issued a second superseding indictment on November 14, 2012, which now charges Gordon with (1) Continuing Criminal Enterprise in violation of 21 U.S.C. § 848; (2) Conspiracy to Possess with Intent to Distribute Marijuana, Cocaine, and Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 846; (3) Distribution of Marijuana in violation of

21 U.S.C. § 841(a)(1); (4) Aiding and Abetting the Distribution of Marijuana in violation of 18 U.S.C. §§ 2, & 841(a)(1); (5) three counts of Use of Communication Facility in Facilitating the Commissions of Violations of the Controlled Substance Act in violation of 21 U.S.C. § 843(b); and (6) Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and § 1956(h). (Docket No. 160, at 1–3, 6–9.) The second superceding indictment also asserts criminal forfeiture against Defendant Gordon pursuant to 21 U.S.C. § 853. (*Id.* at 9–11.)

This Opinion and Order addresses Gordon's Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008, Allegedly Pursuant to a Search Warrant Which Was Executed a 31020 McKinney Drive, Franklin, Michigan. (Docket No. 164, at 9.) The Motion asserts, among other things, that the search warrant was not based on probable cause and constituted a unlawful general warrant. (*Id.*) Gordon also asserts that the good faith exception is inapplicable. (*Id.*)

**BACKGROUND**

On February 11, 2008, Officer Shawn Reed with the Detroit Police Department submitted an affidavit (the "Affidavit") to support the issuance of a search warrant for a premise owned by Defendant Gordon, located at 31020 McKinney Drive, Village of Franklin, Michigan, that was believed to be a stash house used for narcotics trafficking. (Docket No. 164-3, at 1.) The Affidavit states as follows:

> 1) Affiant is a sworn member of the Detroit Police Department, assigned to a multi-jurisdictional narcotic task [] force responsible for investigating narcotic trafficking. Affiant has received specialized training from the Detroit Police Department, Michigan State Police Department, and Drug Enforcement Administration in the areas of narcotic investigative and undercover techniques dealing with the various aspects of the distribution, identification, manufacture, sale and use of controlled substances. Affiant has personally been involved in numerous

narcotic investigations both as a uniformed officer and in an undercover capacity[.]
2) Members of the multi-jurisdictional narcotic task force group 6 received information from a source regarding 31020 McKinney Drive. The information stated the 31020 McKinney Drive was being used as a possible 'stash' location for narcotics and narcotic proceeds. The source also stated that 31020 McKinney Drive is also equipped with an elaborate security system that includes several video surveillance cameras that are affixed to the perimeter of the dwelling.
3) Members of group six conducted surveillance on 31020 McKinney Drive and did observe several video surveillance cameras affixed to the perimeter of the location.
4) Members of the multi-jurisdictional narcotic task force group 6 conducted a record search on 31020 McKinney Drive. The search identified Orlando Ricardo Gordon as the current home owner. Orlando Gordon is currently wanted on three misdemeanor warrants out of 36th District Court and 46th District Court.
8) Members of group six conducted weekly surveillance, for a six week period, on 31020 McKinney Drive, during regularly scheduled garbage pick-up days. Members noted that all of the homes on the block had trash placed out in front, except for 31020 McKinney Drive. 31020 McKinney had trash placed in front, at the curb, on only one occasion during the six week period. Members were unable to conduct a trash pull at this time.
9) On December 10, 2007 members of group 6 observed several bags of garbage abandoned at the curb in front of 31020 McKinney. Members of group six recovered a portion of these bags and transported them to the Farmington Hills Police Department. A search of the recovered garbage resulted in the recovery of a green leafy substance believed to be marijuana. TFO Woloski conducted a preliminary analysis on the green leafy substance. The analysis resulted in a positive test for marijuana. The marijuana was weighed placed in the custody of the Farmington Hills Police Department per their policies and procedures. The marijuana weighed approximately 3.5 grams. TFO Woloski also recovered miscellaneous correspondence that linked the garbage to the McKinney location.
11) On December 31, 2007 at approximately 10:OO A.M., a regularly scheduled trash day for 31020 McKinney, members of group 6 conducted surveillance on 31020 McKinney. Members noted that 31020 McKinney did not have any garbage placed in front of the location.
12) On February 8, 2008 members of group six conducted surveillance on 31020 McKinney. TFO Woloski observed [a] burgundy 2007 Chevrolet Tahoe, registered to Remond Gordon [parked] in front of the location. TFO Woloski then observed Gordon exit 31020 McKinney and approach the 2007 Tahoe. Gordon opened the driver's side rear door and removed a large red duffle bag. Gordon then placed the red duffle bag inside of 31020 McKinney. TFO Woloski stated to affiant that Gordon was very nervously looking around in all directions as he approached the 2007 Tahoe and retrieved the bag. Once Gordon placed the red duffel bag inside of 31020 McKinney he drove away in the 2007 Tahoe.
13) February 11, 2008 members of group six observed several bags of garbage,

abandoned at the curb, in front of 31020 McKinney. Members recovered a portion of the garbage and transported it to the Farmington Hills Police Department for processing. A search of the recovered garbage resulted in the recovery of suspected marijuana. A preliminary analysis on the suspected marijuana resulted in a positive test for marijuana. The marijuana was placed on evidence at the Farmington Hills Police Department per their policies and procedures. TFO Woloski also recovered miscellaneous correspondence that linked the recovered trash to the McKinney location.

14) Utilizing affiants training and experience affiant finds this type of activity consistent with narcotic activity. Narcotic traffickers often utilize houses located in low crime areas to store illegal narcotics and narcotic proceeds. These houses are commonly referred to as 'Stash houses'. Narcotic traffickers also frequently equip these houses with elaborate security and video monitoring systems to safeguard the illegal narcotics and narcotic proceeds from rival narcotic traffickers.

Narcotic traffickers will frequently dispose of their trash in public dumpsters and other residences instead of their own. This is done to assist in evading detection from law enforcement. Many narcotic traffickers are aware that law enforcement agencies utilize 'trash pulls' to assist in investigations. Observations from members of group six indicate that in an almost 3 month period trash was only placed in front of 31020 McKinney on two occasions.

It is also common for small amounts of marijuana to be located in the trash where marijuana is being packaged. This is commonly referred to as 'shake', the left over marijuana residue that did not get packaged.

Affiant has been involved in numerous narcotic, in the overwhelming majority of these raids, illegal firearms were found used to protect the narcotic traffickers, the narcotic proceeds, and the narcotics themselves; therefore affiant seeks to remove same.

Wherefore the affiant has probable cause to believe that the above-described items will be found inside the premises and curtilage of the target location, located in the City of Detroit, County of Wayne and State of Michigan.

(Docket No. 164-3.)

On February 11, 2008, based on the information in the Affidavit, a Search Warrant was issued. The Search Warrant states in relevant part:

**TO THE SHERIFF OR ANY PEACE OFFICER OF SAID COUNTY: P.O. Shawn Reed.** Affiant having sworn to an affidavit for a search warrant and having under oath examined affiant, am satisfied that probable cause exists:

**THEREFORE IN THE NAME OF THE PEOPLE OF THE STATE OF**

4

> **MICHIGAN, I COMMAND THAT YOU SEARCH THE FOLLOWING PLACE** The entire premises and curtilage of 31020 McKinney Drive, Village of Franklin. (Hereafter referred to as the Target location). 31020 McKinney is described as a single story single family grey wood frame dwelling. 31020 McKinney Drive is located on the east side of McKinney between thirteen mile Rd and a dead end. This location is located in the Village of Franklin, County of Oakland, and State of MICHIGAN.
>
> **Also to be searched is the described seller**:
> This search is to include the entire premises, curtilage, all out buildings, garages, or storage buildings related to the above described premises, all containers in or on the premises and curtilage related to the above described premises.
> And to seize, tabulate and make return according to the law the following property and items: all suspected controlled substances, especially Cocaine, Heroin and Marijuana; any narcotic proceeds and/or monies, especially Detroit Police Narcotic Funds, any audio or video tape recordings, books, cellular telephones, computers, equipment, pagers, records, supplies, tally sheets, telephone answering and identification devices, and/or any vehicles used in connection with the concealment, cultivation, distribution, manufacturing, packaging, sales, storing, transportation, uses and/or weighing of controlled devices

(Docket No. 164-2.)

On November 19, 2012, Defendant Orlando Gordon filed his Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008, Allegedly Pursuant to a Search Warrant Which Was Executed a 31020 McKinney Drive, Franklin, Michigan. (Docket No. 164.) Gordon's motion asserts, among other things, that the search warrant was not based on probable cause and constituted a unlawful general warrant. (*Id.*)

## ANALYSIS

**A.     The Affidavit Establishes Probable Cause to Issue the Search Warrant**

Gordon asserts that the Affidavit does not establish probable cause to issue the Search Warrant because (1) the last sentence in the Affidavit mistakenly refers to the 31020 McKinney address as being located in Detroit, Michigan, as opposed to Franklin, Michigan; (2) there is no

5

information in the Affidavit suggesting that the anonymous source referenced in paragraph 2 had personal knowledge of the McKinney address, presented assertions that were corroborated by evidence, and has been reliable as an informant in the past; (3) the evidence from the trash pulls was stale; (4) the reference to Redmond Gordon allegedly carrying a duffle bag is irrelevant to whether or not there is drug trafficking activities occurring at the McKinney address; (5) the presence of marijuana shake in the trash pulls suggests that there was no marijuana present at the McKinney address because the presence of marijuana shake tends to suggest that the marijuana has already been consumed and/or sold; and (6) there is not enough facts presented in the Affidavit, for Officer Shawn Reed to make an independent assessment that the McKinney address was likely being used as a stash house based on his training and experience (i.e., Officer Reed's assertions, based on his training and experience, are purely speculative and conclusory). (Docket No. 164, at 13–23.)

The Government asserts that the Search Warrant was supported by probable cause based on the totality of the circumstances. (Docket No. 223, at 6–7.)

The Fourth Amendment guarantees individuals the right to be free from "unreasonable searches and seizures" of "their persons, houses, papers and effects." U.S. CONST. amend. IV. Under the Fourth Amendment, no search warrant shall issue without probable cause. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990) (citing *United States v. One 1984 Cadillac*, 888 F.2d 1133, 1135 (6th Cir. 1989)). Probable cause exists where there is a "fair probability" that police will find evidence of a crime on the premises of the proposed search. *Jackson*, 470 F.3d at 306 (quoting *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005)). When reviewing the sufficiency of a

search warrant affidavit, this Court "consider[s] whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-byline scrutiny." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). A determination of probable cause will be upheld if there is a "substantial basis" for the probable cause finding. *United States v Lambert*, 771 F.2d 83, 92–93 (6th Cir. 1985). "The . . . determination of probable cause is afforded great deference, and that determination should be reversed only if the [judge] arbitrarily exercised his [or her] discretion." *Woosley*, 361 F.3d at 926.

### 1. The Conflicting Addresses in the Affidavit and the Search Warrant Do Not Render the Search Invalid

Gordon argues that the Affidavit fails to establish probable cause because the Affidavit incorrectly states that the target location is 31020 McKinney Drive, Detroit, Michigan. (Docket No. 164.) The Search Warrant lists the correct address as being located at 31020 McKinney Drive, Village of Franklin, Michigan. (Docket No. 164-2.)

The Sixth Circuit previously held that "technical inaccuracies in a warrant do not automatically render unconstitutional searches conducted pursuant to such a warrant. Rather, [this Court] must consider whether, given the circumstances of the particular case, there was a reasonable probability that another location could have been mistakenly searched because of the inaccuracies contained in the warrant." *See Knott v. Sullivan*, 418 F.3d 561, 569 (6th Cir. 2005); *United States v. Durk*, 149 F.3d 464, 465 (6th Cir.1998) ("The test for determining whether a search warrant describes the premises to be searched with sufficient particularity is not whether the description is technically accurate in every detail, but rather whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any

reasonable probability that another premises might be mistakenly searched.") (internal quotation marks and citations omitted); *see also United States v. Pelayo–Landero*, 285 F.3d 491, 496 (6th Cir.2002).

Here, Gordon does not contend that the Search Warrant contained technical inaccuracies. Accordingly, there was no reasonable probability that the place to be searched could have been mistaken for another location because the officers relied on the Search Warrant, not the Affidavit, when they executed the Search Warrant, and neither party disputes that the Search Warrant contained the correct address for the target location of the search.

Instead, Gordon contends that the Wayne County Circuit Court judge who executed the Search Warrant lacked probable cause to issue the Search Warrant because Officer Reed stated in his affidavit that the 31020 McKinney address was located in Detroit, Michigan, as opposed to Franklin, Michigan.

On February 1, 2013, at the request of the Government, this Court held an evidentiary hearing to address Gordon's Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008, Allegedly Pursuant to a Search Warrant Which Was Executed a 31020 McKinney Drive, Franklin, Michigan. Defendant Gordon stated on the record that he did not request an evidentiary hearing in his motion.

At the February 1, 2013, hearing, the Government called Officer Shawn Reed, the officer who prepared the Affidavit. Officer Reed testified that he had been to the target location of 31020 McKinney Drive, Franklin, Michigan, on several occasions, prior to filing the Affidavit, assisting with the surveillance of the property with the Group Six task-force mentioned in the Affidavit. He testified in relevant part:

> THE GOVERNMENT: When you were filling out this particular search warrant and affidavit of, was there any question in your mind that 31020 McKinney Drive was in the village of Franklin as opposed to the City of Detroit?
> OFFICER REED: No, there was not. As I stated in the legal description of the search warrant. It is in the village of Franklin, County of Oakland state of Michigan.
> THE GOVERNMENT: What's your date of this warrant authorization from the judge, did you in fact go to 31020 McKinney Drive at the village of Franklin?
> OFFICER REED: Yes I did.
> THE GOVERNMENT: Did you assist the search that date?
> OFFICER REED: Yes.
> THE GOVERNMENT: Was that the premises that you intended to have searched on that day when you filled out this warrant and affidavit?
> OFFICER REED: Yes it was.
> THE GOVERNMENT: No further questions?

*See* Transcripts of the February 1, 2013, Motion Hearing.

In *United States v. Winkler*, the Eastern District of Tennessee was faced with a similar situation where the affidavit listed the wrong address. 2008 WL 5136463, *3-4 (E.D. Tenn. 2008). In that case, the affidavit referred to facts occurring at 321 Atkins Road, whereas the defendant lived at 231 Atkins Road. *Id.* at *4. The Search Warrant, however, correctly listed the premises to be searched as 231 Atkins Road. *Id.* Testimony at the evidentiary hearing, in that action, indicated that the listing of "321 Atkins Road" in the affidavit was only a typographical error. The Eastern District of Tennessee held that "affidavits for search warrants must be tested and interpreted in a commonsense and realistic fashion" because "they are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *Id.* (citing *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741 (1965); *United States v. Dunn*, 269 F. App'x 567, 571 (6th Cir. 2008); *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006); *United States v. Sawyers*, 127 F. App'x 174, 181 (6th Cir. 2005)).

Considering the Search Warrant and Affidavit, as well as Officer Reed's testimony, this Court holds that, after applying the common-sense and realistic rule, the discrepancy between the Search Warrant and Affidavit is nothing more than a mere typographical error. The task force was conducting surveillance on 31020 McKinney address in the Village of Franklin for three months. The Affidavit and the Search Warrant were filed on the same day. Officer Reed testified that the surveillance was confined to 31020 McKinney Drive, Franklin, Michigan. Officer Reed and the other officers in the task force knew they were in the Village of Franklin, Michigan, when they were conducting surveillance of the property for three months. The Defendants have not provided any evidence suggesting otherwise. Finally, Officer Reed was one of the officers who executed the Search Warrant.

2. **The Affidavit Establishes Probable Cause to Issue the Search Warrant**

Gordon asserts that the four corners of the Affidavit do not establish probable cause because (1) there is no information in the Affidavit suggesting that the anonymous source referenced in paragraph 2 had personal knowledge of the McKinney address, presented assertions that were corroborated by evidence, and has been reliable as an informant in the past; (2) the evidence from the trash pulls was stale; (3) the reference to Redmond Gordon allegedly carrying a duffle bag is irrelevant to whether or not there is drug trafficking activities occurring at the McKinney address; (4) the presence of marijuana shake in the trash pulls suggests that there was no marijuana present at the McKinney address because the presence of marijuana shake tends to suggest that the marijuana has already been consumed and/or sold; and (5) there is not enough facts presented in the Affidavit, for Officer Shawn Reed to make an independent assessment that the McKinney address was likely being used as a stash house based on his training and experience (i.e., Officer Reed's assertions,

based on his training and experience, are purely speculative and conclusory). (Docket No. 164, at 13–23.)

Officer Reed is a member of the Detroit Police Department assigned to the multi-jurisdictional narcotic task force, Group 6, which conducted the surveillance activities of the McKinney address mentioned in his Affidavit.

In his Affidavit, Officer Reed asserts that based on his experiences in narcotics investigations and surveillance of suspected stash houses, the evidence that the task force procured from the surveillance of the McKinney address suggests that the residence is being used as a stash house.

Officer Reed received specialized training from the Detroit Police Department, Michigan State Police Department, and the Drug Enforcement Agency in the areas of narcotic investigative and undercover techniques. (Docket No. 164-3, at 1.) He has personally been involved in "numerous investigations both as a uniformed officer and in an undercover capacity." (*Id.*)

Officer Reed, in his Affidavit, asserts that an unnamed source originally tipped the task force off that the target location, which was owned by Orlando Gordon, at that time, was being used as a possible stash house. (*Id.*)

Upon conducting surveillance of the property, members of the task force observed video cameras affixed to the perimeter of the location. (*Id.*) Furthermore, Officer Reed and the task force observed that trash was placed on the curb for pick up on only three occasions during a three month period. (*Id.* at 1–2.)

In his Affidavit, Officer Reed states as follows:

Narcotic traffickers often utilize houses located in low crime areas to store illegal narcotics and narcotic proceeds. These houses are commonly referred to as 'Stash houses'. Narcotic traffickers also frequently equip these houses with elaborate

11

> security and video monitoring systems to safeguard the illegal narcotics and narcotic proceeds from rival narcotic traffickers.
> Narcotic traffickers will frequently dispose of their trash in public dumpsters and other residences instead of their own. This is done to assist in evading detection from law enforcement. Many narcotic traffickers are aware that law enforcement agencies utilize 'trash pulls' to assist in investigations.

(*Id.* at 2.)

Furthermore, Officer Reed asserts that on December 10, 2007, and February 11, 2008, two separate trash pulls at the target location resulted in the recovery of marijuana shake. (*Id.* at 1–2.) Specifically, three and a half grams of marijuana shake was recovered on December 10, 2007. (*Id.* at 2.) Officer Reed does not state how much marijuana was recovered on the second trash pull. Correspondence was also found during the trash pulls that linked the trash to the target location. (*Id.*) Officer Reed asserts that a third trash pull was attempted, but controlled substances were not discovered.

It is unclear what the informant's track record is with regard to previous information that he or she has provided to the police. But, his or her track record is irrelevant because no search warrant was requested at that time.

After engaging in extensive surveillance of the property for three months, the officers accumulated enough evidence, described in Officer Reed's Affidavit, to establish probable cause for the issuance of the Search Warrant based on the totality of the circumstances. This evidence includes marijuana shake pulled from the trash that was linked to the target location on two separate occasions, an unusual pattern of trash placement on the curb of the target location, and an elaborate system of video surveillance located around the target property.

Furthermore, this Court notes that the fact that Remond Gordon, Orlando Gordon's brother,

12

was observed nervously giving Orlando Gordon a red duffel bag, and then waiting for the bag to enter the target location before leaving in his car, may be insufficient in itself to establish probable cause. But, when taken together with the other evidence, it is suggestive that the residence may be a stash house.

Gordon argues that because "marijuana shake" was found, that suggests that there was no marijuana on the property because shake is considered the end product of marijuana use and distribution, suggesting that there was no probable cause that marijuana could be found in the target location because any marijuana that may have been on the property was likely consumed or sold when the Search Warrant was executed. The fact that the marijuana shake was found on two trash pulls, out of three, actually goes more towards establishing that there was an ongoing drug trafficking operation occurring at the target location, especially considering the quantity of the shake found on the first trash pull, 3.5 grams.

Furthermore, the fact that the officers did not question whether someone on the property had a Michigan medical marijuana card is irrelevant. Surely, Gordon does not expect the officers to engage in such an inquiry. Regardless, Gordon and the other defendants who joined in and/or concurred with this motion have not provided any evidence suggesting that the marijuana was used lawfully or that lawful use is a defense to any of the crimes in the second superceding indictment.

Finally, the alleged staleness of the marijuana shake found during the December 10, 2007, trash pull, is offset by the other evidence presented, as well as the fact that marijuana was found on two out of the three trash pulls, which suggests that there is reoccurring or continual drug trafficking operation occurring on the property. Regardless, the second trash pull, which resulted in the recovery of marijuana, occurred on February 11, 2008. (Docket No. 164-3.) The Affidavit and

13

Search Warrant were both filed on February 11, 2008. Surely, Gordon cannot argue that the marijuana shake recovered on the day that the Search Warrant and Affidavit were filed is stale.

**B.     The Arrest Warrant Is Not A General Warrant**

Gordon asserts that the Affidavit failed to establish probable cause to seize the broad categories of items described in the Search Warrant because the Search Warrant not based on probable cause and was overly broad (not particular to the alleged crime committed) to the extent that it essentially left the officers, who executed the warrant, with unlimited discretion to seize whatever items they came into contact with at the McKinney address in Franklin, Michigan. (Docket No. 164, at 23–27.) Gordon also contends that, even assuming that there was sufficient probable cause for the seizure of the narcotics found on the premises, there was not sufficient probable cause for the cash, televisions and other items found on the premises. (*Id.* at 24.)

"It is well-settled that items to be seized pursuant to a search warrant must be described with particularity to prevent the seizure of one thing under a warrant describing another in violation of the Fourth Amendment." *United States v. Wright*, 343 F.3d 849, 863 (6th Cir.2003) (citation and internal quotation marks omitted). Generally, this "prevents the use of general warrants authorizing wide-ranging rummaging searches" that violate the prohibition against unreasonable searches and seizures. *United States v. Logan*, 250 F.3d 350, 364 (6th Cir.2001). "Therefore, the scope of a warrant should be confined to evidence relating to a specific crime, supported by probable cause." *U.S. v. Hanna*, 661 F.3d 271, 286 (6th Cir. 2011). "[T]he degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought. *United States v. Henson*, 848 F.2d 1374, 1383 (6th Cir. 1988). "[A] description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Id.* (quoting *United States*

*v. Blum*, 753 F.2d 999, 1001 (11th Cir.1985).

As mentioned before, there was probable cause to issue the Search Warrant. Thus, the only issue that remains is whether the Search Warrant is an unlawful general warrant.

In describing the places and things to be searched, the Search Warrant states as follows:

> **THEREFORE IN THE NAME OF THE PEOPLE OF THE STATE OF MICHIGAN, I COMMAND THAT YOU SEARCH THE FOLLOWING PLACE** The entire premises and curtilage of 31020 McKinney Drive, Village of Franklin. (Hereafter referred to as the Target location) . . . .
>
> **Also to be searched is the described seller**:
> This search is to include the entire premises, curtilage, all out buildings, garages, or storage buildings related to the above described premises, all containers in or on the premises and curtilage related to the above described premises.
> And to seize, tabulate and make return according to the law the following property and items: all suspected controlled substances, especially Cocaine, Heroin and Marijuana; any narcotic proceeds and/or monies, especially Detroit Police Narcotic Funds, any audio or video tape recordings, books, cellular telephones, computers, equipment, pagers, records, supplies, tally sheets, telephone answering and identification devices, and/or any vehicles used in connection with the concealment, cultivation, distribution, manufacturing, packaging, sales, storing, transportation, uses and/or weighing of controlled devices

(Docket No. 164-2.)

The Search Warrant was issued on probable cause that the target location was being used as a stash house for narcotics trafficking. The list of items were particular to the crime of narcotics trafficking, including all suspected controlled substances, any narcotics proceeds, and al vehicles used in connection with narcotics trafficking. The Search Warrant's reference to audio or video tape recordings, books, cellular telephones, computers, equipment, pagers, records, supplies, tally sheets, telephone answering and identification devices are typical for alleged narcotics trafficking rings. Narcotics distribution operations typically generate a broad range of items of evidentiary significance. *U.S. v. Martin*, 920 F.2d 393, 399, n. 7 ("Ongoing narcotics distribution operations

15

typically generate a broad range of items which have evidentiary significance. To name a few-chemicals, money, firearms, records, ledgers, beepers, scales, telephone numbers, a variety of common household items and related narcotic paraphernalia. In contrast, the evidence from a single armed bank robbery might be no more inclusive than a firearm and the money taken."). The evidence mentioned in the Search Warrant has potential evidentiary value to the furtherance of the alleged criminal drug operation.

It is unclear what Gordon means when he states that there was no probable cause for the televisions seized, as that item(s) was not listed on the Search Warrant and Gordon did not offer any documents suggesting that televisions were seized. This is not an issue because the Search Warrant does not describe televisions, and it is unclear, at this stage, whether any televisions will be offered into evidence to establish a narcotics trafficking operation.

C.  **The Good Faith Exception Applies to the Search Warrant**

The Government contends that, even assuming the Search Warrant was not based on probable cause, the good faith exception applies because there was sufficient indicia of probable cause for the officers to rely on when they executed the Search Warrant. (Docket No. 223, at 8–9.) Furthermore, the Government asserts that the circumstances surrounding the issuance and execution of the Search Warrant do not fit situations where the exception does not apply. (*Id.*)

Gordon counters that the good faith exception does not apply because the Search Warrant was so lacking in probable cause for the aforementioned reasons. (Docket No. 164, at 27–29.)

In *Herring v. United States*, the Supreme Court reiterated that "suppression is not an automatic consequence of a Fourth Amendment violation." 555 U.S. 135,137, 129 S.Ct. 695, 698 (2009); *see also United States v. Master*, 614 F.3d 236, 242 (6th Cir. 2010). "To trigger the

exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring*, 555 U.S. at 144, 129 S.Ct. at 702.

"When police rely on an invalid warrant, the good-faith exception bars suppression of the evidence unless 'a reasonably well trained officer would have known' that the warrant was defective." *United States v. Newsome*, Case No. 12-3013, 2012 WL 5440027, at *3 (6th Cir. Nov. 8, 2012); (quoting *United States v. Leon*, 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405 (1984)).

The Sixth Circuit held that the good-faith exception does not apply in the following four situations:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a 'bare bones' affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (citing *Leon*, 468 U.S. 897, 104 S.Ct. 3405).

The facts presented by the parties and the testimony of Officer Reed at the February 1, 2013, evidentiary hearing suggest that Officer Reed did not knowingly or recklessly mislead the magistrate because it appears Officer Reed only made a typographical error or unintentionally listed the address of the premises to be searched in the Affidavit as being located in Detroit, Michigan. The Search

Warrant provides the correct address. Officer Reed was one of the officers who executed the warrant. Surely, he and the other members of the task force knew where the premises to searched was located, especially since the task force conducted three months of surveillance on the property.

Likewise, the Wayne County Circuit Court Judge acted neutrally when he issued the Search Warrant, which was based on probable cause.

The Search Warrant was not deficient on its face–it listed the correct address–and the task force members knew what home was subject to the search.

Finally, the police acted in good faith in executing the Search Warrant. They executed the Search Warrant by referring to the address on the Search Warrant, not the Affidavit. Again, Officer Reed and the other members of the task force surely knew the correct address of the place to be searched.

D. **Gordon's Reply Brief Was Untimely and the New Arguments Advanced In It Are Irrelevant to the Issues Presented in his Motion**

On June 29, 2013, Gordon filed "Defendant Orlando Gordon's Reply Brief in Support of Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008 Allegedly Pursuant to a Search Warrant Which Was Executed at 31020 McKinney Drive, Franklin, MI." (Docket No. 271.) Gordon's reply brief was filed **nearly two months** after the Government filed its response. Furthermore, it was filed **three days** before the scheduled evidentiary hearing to address Gordon's motion. On February 1, 2013, this Court struck Gordon's reply as untimely under Eastern District of Michigan, Local Rules 7.1(e)(1) and 7.1(d)(3)(B). (Docket No. 287.)

Regardless, this Court has reviewed Gordon's reply. In Gordon's reply he reiterates the arguments that he made in his motion, but then provides entirely new arguments that are irrelevant

18

to the arguments made in the brief. Specifically, in his reply, Gordon requests an evidentiary hearing to address the issue of "whether or not[, under M.C.L. § 780.655,] the evidence supports a determination that the affiant intentionally failed to leave a copy of the search warrant and the return (or tabulation) at the scene of the search, or to file these documents with the Third Circuit Court." (Docket No. 271, at 7.)

At the evidentiary hearing addressing Gordon's Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008, Allegedly Pursuant to a Search Warrant Which Was Executed a 31020 McKinney Drive, Franklin, Michigan, Mr. John F. Royal, counsel for Defendant Orlando Gordon, and Mr. William M. Hatchett, counsel for Defendant Vince Shivers, as well as the other defendants who joined in and/or concurred with Gordon's motion, did not provide any argument about how this new argument relates to the arguments made in Gordon's motion.

## CONCLUSION & ORDER

**IT IS ORDERED** that Defendant Orlando Gordon's Motion to Suppress Physical Evidence Purposely Seized on February 11, 2008, Allegedly Pursuant to a Search Warrant Which Was Executed a 31020 McKinney Drive, Franklin, Michigan [Docket No. 164] is **DENIED**.

Accordingly, the joinders in and/or concurrences with Gordon's motion are likewise **DENIED.**

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 5, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on

19

February 5, 2013, by electronic and/or ordinary mail.

                                      S/Jennifer McCoy
                                      Case Manager