UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States,

    Plaintiff,

v.                                                                                     Case No. 11-cr-20752

D-1, Orlando Gordon, et al.,                      Sean F. Cox
                                                                              United States District Court Judge

    Defendants.
_____/

**ORDER
DENYING GORDON'S MOTION TO SUPPRESS FRUITS OF ELECTRONIC
SURVEILLANCE OBTAINED PURSUANT TO MULTIPLE TRACKING ORDERS,
AND REQUEST FOR AN EVIDENTIARY HEARING [DOCKET NO. 179]**

On January 10, 2012, a federal grand jury returned a multi-count indictment charging Defendant Orlando Gordon ("Gordon") with Conspiracy to Possess with Intent to Distribute and to Distribute Marijuana, Cocaine, and Cocaine Base in violation of 21 U.S.C. §§ 842(a)(1) and 846. (Docket No. 3, at 1–3.) The indictment also asserts criminal forfeiture against Defendant Gordon pursuant to 21 U.S.C. § 853. (*Id.* at 4–6.)

On November 14, 2012, the grand jury issued a second superseding indictment on November 14, 2012, which now charges Gordon with (1) Continuing Criminal Enterprise in violation of 21 U.S.C. § 848; (2) Conspiracy to Possess with Intent to Distribute Marijuana, Cocaine, and Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1) and 846; (3) Distribution of Marijuana in violation of 21 U.S.C. § 841(a)(1); (4) Aiding and Abetting the Distribution of Marijuana in violation of 18

1

U.S.C. §§ 2, & 841(a)(1); (5) three counts of Use of Communication Facility in Facilitating the Commissions of Violations of the Controlled Substance Act in violation of 21 U.S.C. § 843(b); and (6) Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(I) and § 1956(h). (Docket No. 160, at 1–3, 6–9.) The second superceding indictment also asserts criminal forfeiture against Defendant Gordon pursuant to 21 U.S.C. § 853. (*Id.* at 9–11.)

During discovery, it was learned that the Government utilized electronic wiretap surveillance as outlined by Gordon below:

| CASE TRACKING NO. | DATE ORDER ISSUED | PHONE NO. | ALLEGED USER |
| --- | --- | --- | --- |
| No. 08US60019-P4 (4th extension) | 11/17/10 | (313) 817-8034 | Orlando Gordon |
| No. 08US60019-P3 (3rd extension) | 10/5/10 | (313) 817-8034 | Orlando Gordon |
| No. 08US60019-P2 (2nd extension) | 9/5/10 | (313) 817-8034 | Orlando Gordon |
| No. 08US60019-P1 (1st extension) | 8/6/2010 | (313) 221-4593 | Orlando Gordon |
| No. 08US60019-P | 7/7/2010 | (313) 221-4593 | Orlando Gordon |
| No. 09US60051-T | 11/3/2010 | (313) 778-2591 | Derrick Terry |
| No. 09US60051-R1 (first extension) | 9/7/201 | (313) 334-1593 | Derrick Terry |
| No. 09US60051-R | 8/17/2010 | (313) 334-1593 | Derrick Terry |
| No. 09US60051-P | 6/15/10 | (313) 784-1435 | Derrick Terry |
| No. 09US60051-E1 (amended order) | 4/21/2010 | (313) 334-0863 | Derrick Terry |
| No. 09-US60051-E1 (amended order) | 4/21/2010 | (313) 790-8622 | Darren Terry |
| No. 09-US60051-E1 (1st extension-amended order) | 4/21/2010 | (313) 808-0118 | Darren Terry |
| No. 09US60051-E1 | 4/20/2010 | (313) 334-0863 | Derrick Terry |
| No. 09-US60051-E1 | 4/20/2010 | (313) 790-8622 | Darren Terry |
| No. 09-US60051-E1 (1st extension) | 4/20/2010 | (313) 808-0118 | Darren Terry |
| No. 09-US60051-E (amended order) | 2/25/2010 | (313) 808-0118 | Darren Terry |
| No. 09-US60051-E | 2/18/2010 | (313) 808-0118 | Darren Terry |
| No. 09US60019-F2 (2nd extension) | 7/14/2009 | (313) 729-0356 | Wendell Tobias |
| No. 09US60019-F1 (1st extension) | 6/11/2009 | (313) 729-0356 | Wendell Tobias |

(Docket No. 179, at 2–3.) (text size and format has been altered).

On November 19, 2012, Gordon filed a Motion to Suppress Fruits of Electronic Surveillance Obtained Pursuant to Multiple Tracking Orders, and Request for An Evidentiary Hearing. (Docket No. 179.) In that motion, Gordon requests that, for the reasons mentioned below, this Court "conduct an Evidentiary Hearing in this matter, and enter an Order suppressing from the evidence herein the electronic and wire communications so unlawfully intercepted, together with any and all fruits thereof, and any evidence gained through the exploitation of such unlawfully intercepted communications." (*Id.* at 6.)

**ANALYSIS**

Gordon contends that the Case Tracking Orders identified above were defective because (1) "the Affidavits submitted to obtain the Case Tracking Orders authorizing electronic surveillance in this case failed to establish probable cause for the issuance of such orders"; (2) "[t]he Applications and Affidavits submitted to obtain the Case Tracking Orders authorizing electronic surveillance in this case failed to establish a necessity for electronic surveillance"; (3) "the agents failed to minimize the severity of the intrusion into the privacy rights of people whose telephone conversations were intercepted, as required by the Case Tracking Orders and by Title III." (*Id.* at 8.)

    **A.    There Was Probable Cause to Issue the Tracking Orders**

In his motion, Gordon seems to contend that all the Affidavits used to obtain the aforementioned wiretap warrants failed to establish probable cause. (Docket No. 179, at 11–12.) Because many of the aforementioned wiretaps did not involve phone numbers used by Gordon and

3

conversations that Gordon did not take part in, it unclear how Gordon has standing to make such a broad challenge.

In order to resolve this matter, this Court held a motion hearing on February 1, 2013. At that hearing, this Court asked John F. Royal, counsel for Gordon, what wiretap applications, warrants, orders and affidavits Gordon is challenging in his motion, including the specific parts of those documents that Gordon is challenging. Mr. Royal stated that Gordon is challenging the following wiretap warrants: (1) tracking number 08US60019-P1 (first extension), which is signed by United States District Court Judge Paul D. Borman and marked as Exhibit 14, Application 8/5/2010, in the Government's response to Gordon's motion; (2) tracking number 08US60019-P2 (second extension), signed by United States District Court Judge Paul D. Borman and marked as Exhibit 20, Application 8/15/2010, in the Government's response to Gordon's motion; (3) tracking number 08US60019-P3 (third extension), signed by United States District Court Judge Paul D. Borman and marked Exhibit 22, Application 10/15/2010, in the Government's response to Gordon's motion; and (4) tracking number 08US60019-P4 (fourth extension), signed by United States District Court Judge Paul D. Borman and marked Exhibit 24, Application 11/17/2010, in the Government's response to Gordon's motion.

Although, at the hearing, he did not refer to tracking number 08US60019-P, signed by United States District Court Judge Paul D. Borman and marked Exhibit 13, Order 7/7/2010, in the Government's response to Gordon's motion, this Court assumes that Mr. Royal meant to include those documents, as well, with his list of applications and affidavits that he is challenging. That tracking order is the original order. The aforementioned tracking orders that Mr. Royal referred to at the motion hearing are requests for extensions of that order.

Under 18 U.S.C. § 2518(3), a judge may properly enter an ex parte order approving a wiretap if the judge determines on the basis of facts submitted by the applicant that—

> (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
>
> (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
>
> (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> (d) except as provided in subsection (11), there is probable cause for belief that the facilities from which, or the place where, the wire, oral, or electronic communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3)(a)–(d).

This Court assesses wiretap applications "on the totality of the circumstances and in a reasonable and common sense manner. Under this standard, the question that must be decided in issuing a warrant is whether there is probable cause to believe that evidence of a crime will be uncovered. Obviously, certainty is not required at this stage, and the exact quantum of support required has frequently been described as 'a fair probability,' but more than a 'mere suspicion,' that such evidence will be discovered. Facts can amount to a fair probability without being proof beyond a reasonable doubt or even a prima facie showing." *United States v. Alfano*, 838 F.2d 158, 161–62 (6th Cir.1988) ("The basic standards for a wiretap are similar to those for a search warrant"); *see also Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 2330 (1983); *United States v. Poulsen*, 655 F.3d 492, 503–04 (6th Cir. 2011) (When a judge determines that there is probable cause to issue a wiretap

warrant, "[c]ertainty is not required, but rather a fair probability and something more than mere suspicion.").

A determination of probable cause will be upheld if there is a "substantial basis" for the probable cause finding. *United States v Lambert*, 771 F.2d 83, 92–93 (6th Cir. 1985). "Since the issuing judge is in the best position to determine all of the circumstances in the light in which they may appear at the time, 'great deference' is normally paid to the determination of an issuing judge." *Alfano*, 838 F.2d at 162.

Although he provides a great deal of case law discussing probable cause in general and the law relating to the issuance of wiretap warrants, Gordon provides very limited argument to support his assertion that there was no probable cause to issue the wiretap warrants that he is challenging. Likewise, the other defendants who joined in and/or concurred with Gordon's motion have not provided any additional argument or authority suggesting that any of the wiretap warrants in this action were not based on probable cause.

The affidavits that Gordon challenges describe the information obtained from numerous confidential government informants, many of whom have proven reliable in the past. The information suggests that Gordon and the other defendants may be involved in narcotics trafficking and money laundering through various business, including Club Envy, a club that is co-owned by Gordon. The affidavits reiterate the information obtained from prior investigations, including the execution of a search warrant at an alleged stash house, involving a residence owned by Gordon, and prior wiretaps that have produced phone conversations involving various alleged members of the drug operation. The prior conversations seem to suggest Gordon may be involved in narcotics trafficking and money laundering.

Furthermore, the affidavits discuss the evidence that has already been obtained as a result of the surveillance efforts of various task forces observing some of the alleged stash houses that are allegedly used by Gordon and other members of the alleged drug trafficking operation. The affidavits further allege that large drug operations generally tend to use cell phones and other similar devices registered under false names in order coordinate the drug operation. Given the frequency with which the other phones subject to wiretaps were used and the information obtained from those wiretaps, this Court could not find anything in those affidavits suggesting that there was not probable cause to issue the wiretaps that Gordon is challenging.

Because Gordon initially challenged every wiretap warrant in his motion, but has since limited his challenges to the wiretap warrants discussed above, this Court reviewed every wiretap application, affidavit, order and warrant provided by the Government. This Court cannot see where the District Court Judges who issued the wiretap warrants in this action erred in their determination that probable caused existed at the time of the issuance of the warrants.

### B. The Applications and Affidavits Established the Necessity Requirement Under 18 U.S.C. § 2518(1)(c)

Gordon contends that the applications and affidavits that were submitted to support the issuance of the wiretap warrants do not establish the necessity requirement under 18 U.S.C. § 2518(1)(c). (Docket No. 179, at 12–19.)

In support of his challenge to the necessity requirement under 18 U.S.C. § 2518(1)(c), Gordon provides the following argument:

> [I]t is also not the office of a supervising judge to accept unconditionally an applicant's conclusions regarding utility and disutility, and allegations of necessity must be evaluated in light of the particular facts of the investigation at hand, and the

7

obvious potential to pursue conventional investigatory techniques in light of those facts.

In addition to the obvious potential value to further exploit the already successful conventional investigative tools available, there is *nothing* in the affidavits which provides a factual basis for the conclusion that the proposed electronic surveillance would get the agents what they wanted - e.g., 'the full extent of' the alleged enterprise and all its suspected activities and methods, 'the full extent of' knowledge, criminal intent, roles, and functions of' all of its members, then known or unknown, and the like.

Obviously, this is true in every case in which investigators have not identified all the participants of a jointly undertaken enterprise, or all of their activities - or if they merely postulate the existence of other participants, other crimes, of *anything* beyond their ken - so if such a showing were sufficient, then the statutorily required necessity would be meaningless, a foregone conclusion in every such case - or easily avoidable by the simple expedient of investigative ambition - and this clearly cannot be so.

**Because the defects here are basic, it is unnecessary to parse each of the necessity allegations of the subsequent affidavits, which are much like those of the first.** Thus, each affidavit repeats the inherent limitations of individual investigative techniques to achieve the broad investigative goals, but does not examine the potential value of combining them, understates or undervalues that which has been achieved by doing so, while assuming, without demonstrating, that the proposed electronic surveillance will achieve.

Each of the affidavits in support of the extension applications follows this same pattern, and suffers from the same essential failings which were fatal to the first. Each, when examined in light of the realities of the investigation, must be seen as paying lip service to the necessity requirement, and nothing more.

(*Id.* at 18–19.) (emphasis added).

To demonstrate necessity under 18 U.S.C. § 2518(1)(c), an application for a wiretap warrant must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Rice*, 478 F.3d 704, 709–10 (6th Cir. 2007) (quoting 18 U.S.C. § 2518(1)(c)).

The necessity requirement "'ensures that a wiretap is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Id.* (quoting *United States*

*v. Alfano*, 838 F.2d 158, 163 (6th Cir.1988)). "Further, the necessity requirement protects against the impermissible use of a wiretap as the 'initial step in [a] criminal investigation.'" *Id.* (quoting *United States v. Giordano*, 416 U.S. 505, 515, 94 S. Ct. 1820, 40 L.Ed.2d 341 (1974)).

The applicant's burden is not a heavy burden. "In endeavoring to secure a wiretap warrant, the government need not prove the impossibility of other means of obtaining information." *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002). The application must demonstrate that the government gave "'serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigator's belief that such non-wiretap techniques have been or will likely be inadequate.'" *United States v. Stewart*, 306 F.3d 295, 305 (6th Cir. 2002) (quoting *Lambert*, 771 F.2d at 91)). "[T]he mere fact that some investigative techniques were successful in uncovering evidence of wrongdoing does not mandate that a court negate the need for wiretap surveillance." *Id.* It is not necessary to "'prove that every other conceivable method has been tried and failed.'" *Poulsen*, 655 F.3d at 504 (quoting *Alfano*, 838 F.2d at 163).

This Court is not convinced by Gordon's assertion that because the defects are basic, he does not need to "parse each of the necessity allegations." Once again, Gordon has failed to provide any argument to support his position. If anything, the cases that Gordon cites to provide marginal background material regarding the standard to be applied to demonstrate necessity under 18 U.S.C. § 2518(1)(c).

All the affidavits, including the ones that Gordon specifically challenge in his motion, discuss, in detail, the necessity for the wiretaps. The affidavits state the investigative goals, which include direct evidence of Gordon's involvement in drug trafficking and determining the identity of

his alleged drug trafficking associates. (*See e.g.,* Government's Response, Ex. 14, App. 8/5/2010, pp. 49–55.) They provide a detailed explanation of how other investigative techniques have failed or are likely to fail. Those investigative techniques include the use of confidential sources and undercover agents, consensual recordings, other wiretaps, physical surveillance, pen registers, trash searches, closed circuit television recordings, and search warrants. (*See, e.g., id*.) The affidavits state that many of the aforementioned investigative techniques have proven impracticable, including physical surveillance and personal interviews with the defendants, given the tight-knit nature of the alleged drug operation. It is unclear how these affidavits and the applications have basic flaws. As mentioned before, the necessity provision under § 2518 is not a high hurdle.

Contrary to Gordon's assertion, the inclusion of conclusory assertions and boilerplate language in the applications and affidavits is minimal, at best. The applications and affidavits contain specific information for the judges who issued the warrants to find necessity for the electronic surveillance.

### C. The Government Reasonably Minimized the Intrusion Into Conversations Not Otherwise Subject to Interception in Conformity with the Case Tracking Orders and 18 U.S.C. § 2518(5)

Gordon asserts that the Government failed to reasonably minimize the intrusion into conversations not relevant to the criminal activities, that the Defendants are alleged to have engaged committed, in violation of the Case Tracking Orders and 18 U.S.C. § 2518(5). (Docket No. 179, at 19–20.)

Title III requires that surveillance "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." 18 U.S.C. § 2518(5). To warrant suppression, a defendant must show that "monitoring agents exhibited

a high disregard for the [defendant's] privacy rights or that they did not do all they reasonably could to avoid unnecessary intrusions." *United States v. Feldman*, 606 F.2d 673, 679 (6th Cir. 1979). "The minimization statute is deemed to be satisfied if on the whole the agents have shown a high regard for the right of privacy and have done all they reasonably could to avoid unnecessary intrusion." *Id.* (internal citations and quotations omitted). The Defendant bears the burden of production and persuasion in challenging the Government's compliance with the minimization requirement. *Id.*; *United States v. Giacalone*, 853 F.2d 470, 483 (6th Cir. 1988).

It is unclear what minimization efforts Gordon is challenging because in his motion he asserts as follows:

> Upon information and belief, Movant Orlando Gordon believes that the government failed to reasonably minimize the intrusion into conversations in violations of the Case Tracking Orders and 18 U.S.C. 2518 (5). But the government has failed to provide in discovery with respect to these Tracking Orders, the records, showing any efforts to minimize the intrusion of the electronic surveillance, as required by Title III. Mr. Orlando Gordon is therefore moving separately for discovery of such records. He will provide further briefing on this issue once he has additional facts to present to the court on this issue.

(Docket No. 179, at 19.)

Thus, it appears Gordon is asserting this challenge because he has not received any "records" suggesting that the Government did not minimize its intrusions into conversations under 18 U.S.C. § 2518(5). But, as the Government points out, Gordon has received the intercepted calls, as well as summaries and transcripts of those calls. Furthermore, Gordon has the wiretap applications, affidavits, and authorization orders. Those documents describe the minimization efforts taken on the part of the officers in great detail.

11

Gordon requests an evidentiary hearing, but he has not even made an initial showing of contested fact to be entitled to such a hearing. *See Giacalone*, 853 F.2d at 483 ("On appeal, defendants do not argue that the evidence presented to the district court was sufficient to require an evidentiary hearing on the minimization issue. Instead, defendants seem to argue that they were entitled to a hearing as a matter of course because the government has the burden of proving that the minimization requirements were met. In their brief on appeal, defendants characterize the district court's ruling as 'Kafkaesque' because all the evidence relating to the government's compliance with the minimization requirement remained in the government's possession. Defendants apparently claim that they had a right of access to all of the surveillance records and to present evidence gleaned from the records at an evidentiary hearing. We find defendants' argument without merit. Defendants' argument is premised on the assumption that the government bears the burden of production and persuasion concerning its compliance with the minimization requirements. However, the law is clear in this circuit that 'the burden of production and persuasion rests on the person seeking to suppress evidence.'"). Gordon's reliance on a lack of "records" showing any efforts to minimize the intrusion of the electronic surveillance is unconvincing based on what he has already received in discovery, i.e., the intercepted calls, the summaries and transcripts of the intercepted calls, the wiretap applications, the wiretap affidavits, and the wiretap authorization orders. His argument is akin to the argument made in *Giacalone*. Like the defendant in that action, Gordon seems to believe that the Government bears the burden. Gordon had all the information and documents that he needed to make a minimization challenge if one were warranted.

After reviewing all of the wiretap applications, affidavits and orders this Court does not believe a minimization challenge has merit. The affidavits discuss the minimization efforts in quite

12

some detail. The affidavits assert that the Government will develop or has developed protocol and procedures for all monitoring agents to follow, in order to avoid intercepting phone conversations that are not relevant to drug trafficking and the other offenses the defendants are alleged to have committed. There is no reason to believe the agents did not follow that protocol.

**IT IS ORDERED** that Defendant Orlando Gordon's Motion to Suppress Fruits of Electronic Surveillance Obtained Pursuant to Multiple Tracking Orders, and Request for An Evidentiary Hearing [Docket No. 179] is **DENIED**;

**IT IS FURTHER ORDERED** that all the joinders in and/or concurrences with this motion are **DENIED**.

**IT IS SO ORDERED.**

Dated: February 7, 2013

S/Sean F. Cox
Sean F. Cox
United States District Judge

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager